**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| In Re: Children's National Subpoena No. 25-1431-028 | Case No. 8:26-cv-01825-JRR |

**REPLY IN SUPPORT OF**
**MOTION TO LIMIT SUBPOENA DUCES TECUM**

i

**INTRODUCTION**

This is not the Court's first time addressing the Government's efforts to obtain sensitive patient information pursuant to the Subpoena.[1]  On two separate occasions, this Court has held that the Subpoena lacks "a legitimate government purpose, is not limited in scope to any legitimate purpose, and is oppressive in its breadth."  Patient Op. at 14; *In re: Administrative Subpoenas to Children's Hospitals*, No. 26-cv-01834 ("Patient Class Action"), Dkt. No. 28 at 23 (D. Md. June 9, 2026) ("Patient Op. II").  Indeed, the Court has characterized the Subpoena as "the classic impermissible fishing expedition" that is "untethered to any lawful purpose."  Patient Op. at 15, 16; Patient Op. II at 18 n.28, 25.

In its Opposition, the Government largely sidesteps the substantive deficiencies this Court has repeatedly identified and instead focuses on procedural objections—contending that CNH's Motion should be denied because it was filed after the Subpoena's return date and it is barred by sovereign immunity.

As to the substance of CNH's motion, the Government remains unable to articulate a basis for its alleged investigation despite multiple attempts to do so.  It relies on the same theory of FDCA liability unanimously rejected by courts across the country.  And it asks this Court to hold that patients forfeit their constitutional right to privacy simply because Section 3486 provides, in general terms, that hospitals may use or disclose such records for a lawful purpose.  But Fourth Circuit precedent dictates that courts must conduct a reasoned assessment of a subpoena's purpose, scope, burden, and breadth—not permit the disclosure of highly sensitive medical information

---

[1] For purposes of this memorandum of law, we adopt defined terms as described in CNH's memorandum of law in support of movant's motion to limit.  Dkt. No. 2-1 ("Mot.").

without clear reason and limitation. The Government has not made the showing necessary to overcome these protections, and the Court should limit the Subpoena accordingly.

For these reasons, and for the reasons set forth below, CNH respectfully requests that the Court grant its Motion to Limit the Subpoena.

**ARGUMENT**

Nothing in the Government's opposition compels deviating from three key determinations already made by this Court: (1) the Subpoena lacks a proper investigative purpose; (2) the Subpoena's requests for patient information are incongruent with the Government's purported investigation of CNH for potential FDCA violations; and (3) the interest of CNH patients in maintaining the privacy of their sensitive medical records outweighs the Government's interest in demanding such information. *See generally* Patient Op. at 11–16; Patient Op. II at 21–25.

*First*, notwithstanding the Government's procedural objections, CNH's motion to limit is not untimely and good cause exists for the Court to consider the motion. *Second*, CNH's motion is not barred by sovereign immunity, and, pursuant to the Administrative Procedure Act ("APA"), Congress has expressly waived sovereign immunity in a proceeding like this—a motion to limit an administrative subpoena. *Third*, despite ample opportunities to do so, the Government (1) still has not demonstrated that the Subpoena serves a proper investigative purpose and (2) cannot provide the Court with an articulated basis to suspect CNH of FDCA violations or otherwise justify the disclosure of sensitive pediatric patient information. *Fourth*, patients have a constitutional privacy interest in their patient records and contrary to the Government's suggestion, Section 3486 does not categorically satisfy constitutional privacy protections.

2

I.    **CNH's Motion Is Not Procedurally Barred**

**A. Good Cause Exists to Consider CNH's Motion**

Effectively conceding on the merits, the Government points to the timing of CNH's motion as the primary basis to deny it. *See* Dkt. No. 14 at 2–3 ("Opp."). According to the Government, the Subpoena's return date is "an inflexible deadline for actions to quash HIPAA subpoenas," and thus CNH's failure to file its underlying motion prior to that deadline (August 7, 2025) precludes relief. Opp. at 2. The Government also claims that this Court's prior finding "that the patient plaintiffs' motion was *not* time barred because [the patients] were *not* the recipients of the subpoena" means CNH's pending motion *is* time barred. *Id.* at 2 (emphasis added) (citing Patient Op. at 6).

The Government's arguments represent a fundamental misunderstanding of Section 3486 and the Court's ability to hear challenges to a HIPAA subpoena notwithstanding the filing date of the motion. As this Court previously held in the Patient Litigation and Patient Class Action, Section 3486 subsection (a)(7) "incorporates the standards applicable to judicial subpoenas." Patient Op. at 7; Patient Op. II at 9. Those standards give this Court discretion to hear CNH's motion, particularly under the present circumstances.

Specifically, Federal Rule of Civil Procedure 45 provides that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense" on the recipient of a subpoena. The rule also states that the court must protect the subpoenaed party if the subpoena (1) "requires disclosure of privileged or other protected matter" or (2) "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

Likewise, Rule 81 states that the Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or

3

by court order in the proceedings." Fed. R. Civ. P. 81(a)(5). Rule 81 gives courts the discretion to (1) "apply the federal rules generally to proceedings to enforce administrative subpoenas," *United States v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n*, 727 F. App'x 119, 124 (6th Cir. 2018) (citing Fed. R. Civ. P. 81 advisory committee note (1946)), and (2) "tailor the Federal Rules to the particular needs and purposes of the [administrative subpoena] proceeding." *United States v. McCoy*, 954 F.2d 1000, 1004 (5th Cir. 1992).

Contrary to the Government's assertion, through Rule 81, this Court can apply Rule 45 and standards applicable to judicial subpoenas as required by the needs of the proceeding and to administer justice.[2] Importantly, courts in this Circuit permit objections to a subpoena after the time specified by Rule 45(d)(2)(B) "in unusual circumstances and for good cause." *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349 (W.D. Va. 1999) (citation omitted); *see also Hall v. Baltimore Police Dep't*, No. CV 1:24-1137-RDB, 2025 WL 509130, at *15 n.5 (D. Md. Feb. 13, 2025); *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 441 (E.D. Va. 2018).[3]

---

[2] Patient Op. at 7–8 ("[T]he Government ignores subsection (a)(7), which expressly incorporates the standards applicable to judicial subpoenas."); Patient Op. II at 18–19; *United States v. Rakhit*, No. 1:18CR33, 2021 WL 1817349, at *5 (N.D. Ohio May 4, 2021); *Tennessee Walking Horse*, 727 F.App'x at 124–125 ("Rule 45 may be utilized by courts considering administrative subpoenas under Rule 81, at the discretion of the district court. At least two of our sister circuits have considered Rule 45 in this context."); *McCoy*, 954 F.2d at 1005; *cf. E.E.O.C. v. Kronos Inc.*, 694 F.3d 351, 371 (3d Cir. 2012) ("Rule 45 does not apply to administrative subpoenas, but . . . found the text of the rule, when coupled with Congress's decision to entrust courts with the enforcement of administrative subpoenas, to be a useful indicator of 'a broad congressional judgment with respect to fairness in subpoena enforcement proceedings.'")

[3] Nor is the Court's ability to consider motions to quash filed after the time specified under Rule 45 contradictory with the provisions of Section 3486. Like Section 3486's deadline of the subpoena return date to "move for an order modifying or setting aside the summons," 18 U.S.C. § 3486(a)(D)(5), Rule 45 provides that an objection to a subpoena "must be served before the earlier of the *time specified for compliance* or 14 days after the subpoena is served," Fed. R. Civ. P. 45(d)(2)(B) (emphasis added), and that a motion to quash or modify a subpoena must be a "timely motion." *Id*. (d)(3)(A).

Notwithstanding this seemingly "inflexible deadline," *see* Opp. at 2, the "unusual circumstances and good cause" exception simply facilitates fairness in subpoena enforcement proceedings, and accounts for situations where (1) an untimely filing is not due to bad faith or intentional failure or (2) a subpoena is overly broad on its face. *See Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136–37 (S.D. Ohio 1999) (excusing untimely objections to subpoena and finding no "intentional failure or bad faith" where the subpoenaed party had already produced extensive documents and had maintained ongoing communication with the subpoena issuer through counsel); *Huene v. U.S. Dep't of Treasury, I.R.S.*, No. 2:11-cv-2110 JAM AC PS, 2013 WL 417747, at *5 (E.D. Cal. Jan. 31, 2013) (excusing untimely

4

Examples of such unusual circumstances and good cause include (1) "a subpoena that is overbroad on its face," (2) when there has been "contact between counsel for the subpoenaed party and the subpoenaing party prior to the challenge to the subpoena," *In re Motorsports*, 186 F.R.D. at 349, and (3) when the subpoenaed party acted "in good faith." *See Huene*, 2013 WL 417747, at \*5; *Sec. & Exch. Comm'n v. Emvest Mortg. Fund, LLC*, No. 04CV2295-DMS(POR), 2005 WL 8173134, at \*2 (S.D. Cal. June 17, 2005).

Here, good cause exists for this Court to consider CNH's Motion. *First*, Request Nos. 11–13 are overbroad on their face and "exceed[ ] the bounds of fair discovery." *Am. Elec. Power Co.*, 191 F.R.D. at 136; *see also* Patient Op. at 14 (describing the Subpoena as "oppressive in its breadth"); Patient Op. II at 23 (same). This Court has determined on multiple occasions that the Subpoena lacks a "legitimate government purpose, is not limited in scope to any legitimate purpose, and is oppressive in its breadth." Patient Op. at 14; Patient Op. II at 23. Critically, the Court characterized the Subpoena as "the classic impermissible fishing expedition" that is "untethered to any lawful purpose *no matter who seeks protection from the court*." Patient Op. at 16 (emphasis added); Patient Op. II at 18 n.28, 25.

The Court's prior rulings regarding the Subpoena are not outliers. As noted in CNH's moving brief, courts nationwide have uniformly concluded that Request Nos. 11–13 and the Government's demands for patient information are irrelevant to a legitimate FDCA investigation and otherwise improper and overbroad. *See* Mot. at 18; *see also In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, No. 1:26-mc-0007-MSM-AEM, 2026 WL 1392565, at \*7 (D.R.I. May 14, 2026). Accordingly, the oppressive breadth and scope of the challenged Requests—bereft of any

---

objections to subpoenas that the court determined were "unquestionably overbroad" and requesting materials irrelevant to underlying claims).

proper investigatory purpose—satisfies good cause and is an independent basis to hear CNH's motion.

*Second*, since receiving the Subpoena, CNH has acted in good faith and consistently communicated with the Government regarding its (1) compliance with the Subpoena, (2) concerns regarding the Requests for PHI and patient-centric information, and (3) efforts at reaching a compromise position that would provide the Government with the information necessary for its investigation while protecting CNH's patient privacy interests. Notably, on July 25, 2025—*before the return date* of the Subpoena—CNH and the Government engaged in a conversation during which counsel for CNH expressed CNH's intention to comply with the Subpoena, while simultaneously voicing its significant concerns regarding the production of PHI and patient-centric information. *See* Dkt. No. 2-4 at 2–3. CNH and the Government ultimately agreed to explore alternatives for production, including the feasibility of anonymizing patient information. *Id.* at 5.

Over the course of the past year, CNH expressly stated to the Government that it was prioritizing the production of records that *did not* contain PHI or other patient information, while reserving its rights concerning documents that *did contain* such information. Consistent with this understanding, and all the while exploring the feasibility of anonymization, CNH made five productions of responsive documents. Each of CNH's five production letters included an express reservation of rights regarding the production of PHI and patient medical records, including the possibility of litigation. *See* Dkt. No. 2-1 at 12.

At no point did the Government object to or express dissatisfaction with CNH's approach. As highlighted in CNH's motion, the Government noted its (1) appreciation that "CNH was 'being proactive about the issue'" of patient information and (2) gratitude, stating that it "'appreciated the work' CNH had done." *See* Dkt. No. 2-4 at 4 (describing CNH and the Government's October 30

6

and December 19, 2025 calls).  In essence, nothing during the parties' communications suggested that the Government disagreed or rejected CNH's reservation of rights regarding the production of PHI and patient-centric records while negotiations continued.

CNH's motion is a direct consequence of the Government's about-face in a March 30, 2026 call during which the Government requested CNH's final position regarding the production of responsive documents containing PHI and patient medical records as well as—around the same time—the Government's escalation of its investigation, including (1) seeking to enforce the HIPAA subpoena in the U.S. District Court for the Northern District of Texas[4] and (2) issuing materially identical grand jury subpoenas out of the same district.[5]  Under these circumstances, good cause exists to justify the Court hearing CNH's motion.

### B.  CNH's Motion Is Not Barred by Sovereign Immunity

Because this Court can consider CNH's motion by virtue of Section 3486 "incorporat[ing] the standards applicable to judicial subpoenas"[6] and "good cause and unusual circumstances existing," CNH's motion is timely and not barred by sovereign immunity under this Court's ruling in the Patient Litigation.  *See* Opp. at 3.  Contrary to the Government's assertion that CNH "simply did not use" its remedy in court, Opp. at 4, the timing of CNH's motion is a direct result of the

---

[4] With respect to the Government's investigation of Rhode Island Hospital, a recipient of an identical HIPAA subpoena, the court observed that "Ms. Hsiao as well as other attorneys, save one Assistant U.S. Attorney, who appear to be assigned to this nationwide investigation, and to this matter itself, are based in Washington D.C., where the DOJ's Civil Division/Enforcement and Affirmative Litigation Branch is located."  *In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, 2026 WL 1392565, at *3.  Like Rhode Island Hospital, over the course of the investigation, CNH has conferred with Government counsel based in Washington D.C.

[5] *See* N.Y.U. Langone Health, *Information for NYU Langone Health Patients*, https://nyulangone.org/public-notices/tyhpsubpoena (last visited June 25, 2026) ("On May 7, 2026, NYU Langone Hospitals ("NYULH") was one of several institutions that received a grand jury subpoena from the U.S. Attorney's Office in the Northern District of Texas.")

[6] Patient Op. at 7; Patient Op. II at 9.

Government's abrupt demand for CNH's final position regarding the production of responsive documents containing PHI and patient medical records.

Moreover, the Supreme Court has determined that even when a statutory deadline serves as a condition to the Government's waiver of sovereign immunity, such a deadline does not serve as a jurisdictional bar absent a clear statement from Congress.[7]  In the absence of such a statement, "even if 'a statute of limitations [is] a condition on the waiver of sovereign immunity,'" *Wilkins*, 598 U.S. at 161 (citation omitted), any statutory deadline is subject to the "presumption" that equitable exceptions apply.  *Wong*, 575 U.S. at 408.

Section 3486(a)(5) does not provide a clear statement from Congress that the statutory deadline is intended to serve as a jurisdictional bar to courts' consideration of post-return date filings.  The subsection states only that a subpoenaed party "may" petition to modify or set aside the summons "at any time before the return date specified in the summons."  18 U.S.C. § 3486(a)(5).  Nothing in this provision "speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the district courts."  *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 57 (D.C. Cir. 2023) (quoting *Wong*, 575 U.S. at 411).  Indeed, the term "'jurisdiction' is wholly absent from [Section 3486(a)(5)]."[8]  Section 3486(a)(5) only speaks "to a claim's timeliness," *Wilkins*, 598 U.S. at 159 (citations omitted), which falls short of the clear statement from Congress required to strip this Court of jurisdiction.

---

[7] *See Wilkins v. United States*, 598 U.S. 152, 158 (2023) ("[M]ost time bars are nonjurisdictional," and "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.") (citations omitted); *United States v. Wong*, 575 U.S. 402, 409 (2015) ("[T]he Government must clear a high bar to establish that a statute of limitations is jurisdictional.  In recent years, we have repeatedly held that procedural rules, including a time bars, cabin a court's power only if Congress has 'clearly state[d]' as much).

[8] *McWhorter v. Fed. Aviation Admin.*, 88 F.4th 1317, 1322 (10th Cir. 2023) (holding that 49 U.S.C. § 1153(b)(1)'s sixty-day time limitation to petition for review of an Administrative Law Judge's decision to the National Transportation Safety Board decision is nonjurisdictional).

Finally, pursuant to Section 702 of the APA, Congress has expressly waived sovereign immunity in suits where a party seeks equitable relief from unlawful agency action. 5 U.S.C. § 702 (waiving sovereign immunity for any lawsuit brought by a litigant "suffering legal wrong because of agency action" and seeking relief "other than money damages"); Patient Op. at 9–10; *see* Patient Op. II at 24 n.32 ("Movants seek only equitable relief from Government agency action, which falls squarely within the [APA's] waiver of sovereign immunity for suit brought by an individual 'suffering legal wrong because of agency action' where the requested relief is 'other than money damages.'") (citation omitted). Because CNH is not requesting money damages and seeks only to limit the Subpoena, the waiver of sovereign immunity in Section 702 applies to CNH's motion. *See id*.

## II.   The Government Has Not Demonstrated that the Subpoena Serves a Lawful or Necessary Investigative Purpose

### A. The Subpoena Lacks a Proper Purpose and Is Not Entitled to Deference

Relying on its briefing in the Patient Litigation, the Government asserts that the Subpoena was properly issued under Section 3486 and appropriately "seeks evidence of adulterated, misbranded, and unapproved new drug violations." Opp. Ex. 1 at 14–15. Therefore, because the Subpoena is "tethered to a proper statutory inquiry," the Government contends that (1) the Court has been provided with "direct evidence of proper purpose" and (2) the Government is entitled to a "presumption of regularity." *Id*. at 16–17.

Not so. *On two occasions*, as to the same subpoena issued to CNH, this Court held that the Subpoena "was not issued for a legitimate governmental purpose, is not limited in scope to any legitimate purpose, and is oppressive in its breadth." Patient Op. at 14; Patient Op. II at 23. As to CNH's pending motion, the Government has not provided the Court with any evidence, information, or record "supporting or pertaining to investigation of [CNH] for any health care

offense." Patient Op. at 12. And tellingly, the Government relies on the same Hsiao declaration, which the Court previously observed provided "no basis on which it suspects [CNH] of misbranding or distributing drugs, or any other conduct, as proscribed by the FDCA." *Id*. at 14; Patient Op. II at 22–23.

In previously quashing the Subpoena issued to CNH, this Court observed that the Government did not provide an "articulated basis to suspect [CNH] of violations of the FDCA," nor particularized information that would justify the "disclosure of [patient] records." Patient Op. at 12; *see also* Patient Op. II at 22. And as for the Hsiao Declaration, the Court highlighted that the submission was bereft of any information "based on her personal knowledge pertaining to a proper *investigation of [CNH] for FDCA violations*"—as opposed to general discussion regarding the purpose and application of the FDCA, the proper scope of Section 3486 affidavits, and the Government's mislabeling and misbranding theories. Patient Op. at 13 (emphasis added). Thus, in the Court's view, it was "utterly unclear . . . why the Government demands production of adolescent patient records, including patient names, dates of birth, social security numbers, parent information, clinical indications, diagnoses, and parent authorization forms." *Id*. at 14; *see also* Patient Op. II at 23.

Nearly five months after the Court's opinion in the Patient Litigation, and almost a month after the Court's decision in the Patient Class Action, the Government still has not provided an articulable basis on which it suspects CNH of violating the FDCA. The Subpoena lacks a proper purpose and should be limited for this reason as well. *See* Patient Op. at 14; *see also* Patient Op. II at 23.

10

### B. The Government Has Not Demonstrated that Patient Records Are Necessary to its Investigation

Again, relying on its briefing in the Patient Litigation, the Government contends that Request Nos. 11–13 "bear directly on whether the practices surrounding distribution, promotion, and sale" of approved drugs used for gender-affirming care violate federal law and "endanger children." Opp. Ex. 1 at 23. However, as this Court and sister courts have recognized, the FDCA is concerned with the regulation of commerce—not patient care and treatment decisions.[9]

Indeed, in quashing the Subpoena's demands for PHI and patient-centric information, the Court observed that there was a "patent disassociation of the scope of the Subpoena from purported investigation of [CNH] FDCA violations." Patient Op. at 14. The Court also remarked that even if the relevant requests were limited—for example, by seeking pediatric patient names, social security numbers, patient diagnoses, and physician assessments—it would still be "strain[ed] to see how such [ ] limitation[s] would bring the Subpoena into an appropriate purpose or constitutional scope to investigate potential FDCA violations by [CNH]." *Id*. at 14 n.17; Patient Op. II at 23 n.31.

Notwithstanding the Court's prior observations, the Government persists in (1) demanding the same patient records and (2) relying on the same rejected theory of relevance of such records to an FDCA investigation. The Government, however, does not need patient-centric information—including psychosocial evaluations, diagnoses, treatment explanations, intake assessments, and

---

[9] *See* Patient Op. at 14 (citing *In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *17); Patient Op. II at 23; *see also In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, 2026 WL 1392565, at *7 ("In sum, the DOJ's FDCA theory does not constitute a legally cognizable basis for this investigation as applied to a prescribing hospital. The off-label prescribing conduct at the core of the DOJ's theory is not illegal under the FDCA."); *In re: Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *4 (D. Colo. Jan. 5, 2026) ("Given that misbranding in the stream of commerce is the FDCA's focus, Requests 11 to 13, which seek personal health data 'have little to do with investigating violations of the FDCA.'"); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 579 (E.D. Pa. 2025); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 238 (D. Mass. 2025).

11

informed consent forms—to investigate whether an approved drug was unlawfully promoted or mislabeled in violation of the FDCA.[10]  *See* Patient Op. at 14 (citation omitted); Patient Op. II at 23.

### III. Patients Possess a Constitutional Right to Privacy and the Government Mischaracterizes Fourth Circuit Precedent

#### A. CNH Patients Have a Constitutional Privacy Interest in Their Patient Records

According to the Government, although the demanded patient-centric records "are sensitive," any expectation of privacy is "incompatible with . . . modern medical practice and the disclosures that [CNH] provides to patients and their families" concerning the potential disclosure of patient-centric information.[11]  In effect, the Government argues that there is no constitutional expectation of privacy regarding the documents responsive to Request Nos. 11–13 because: (1) PHI and patient-centric information is routinely disseminated to third parties for purposes such as hospital administration, billing, health monitoring, and regulatory compliance; and (2) CNH provides patients and their families with a general notice regarding how patient information *may be used or disclosed by law*.

The dissemination of patient information to facilitate treatment and a general notice that PHI *may be* disclosed by law under certain circumstances does not eviscerate the reasonable expectation that disclosure will only occur in lawful circumstances.  *See In re Subpoena Duces*

---

[10] Indeed, in the Patient Class Action, in response to the Court's order quashing the Subpoena, the Government represented "that it will not seek or require production of CNH patient medical records covered under Requests 11, 12, and 13, or any other Subpoena Request to the extent it includes CNH patient identities, or identification of parents or guardians of CNH patients as covered by the Court's order relating to the HIPAA subpoena at issue." Patient Class Action, Dkt. No. 31 at 1 (June 18, 2026).

[11] Opp. Ex. 1 at 18 (citing CHILDREN'S NAT'L HOSP., NOTICE OF PRIVACY PRACTICES (Jan. 31, 2020), https://edge.sitecorecloud.io/childrensnationalhospital-cm4i6knf/media/cnhs-site/files/about/nppprivacypractices2.pdf?rev=52a79fd8ee664fbb8b3fdc9c944115ae, (last visited June 22, 2026); *In re Subpoena Duces Tecum*, 228 F. 3d at 351).

*Tecum*, 228 F.3d at 351.  Although CNH patients have been notified regarding potential disclosure of their records, patients and their families still expect that any disclosure will only occur when consistent with constitutional limits and required pursuant to a legitimate investigation.[12]

Taken to its extreme, the Government's position would mean that every patient treated or examined at a hospital surrenders all constitutional protections over their medical records.  Such a position is unprecedented and has no basis in law.

**B. Section 3486 Does Not Categorically Satisfy Constitutional Privacy Protections**

The Government also suggests that Section 3486 provides a categorical exception to constitutional privacy protections for the demanded patient records.  Opp. Ex. 1 at 21–23.  In doing so, the Government relies on *In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000), which the Government contends categorically recognizes the "Government's compelling interest outweighs any limited [patient] privacy interests." *Id.* at 22.

Contrary to the Government's assertion, *In re Subpoena Duces Tecum* does not hold that Section 3486 categorically satisfies constitutional privacy protections.  While acknowledging the Government's broad administrative subpoena power, the Fourth Circuit made clear that there are limits to the Government's subpoena power and, additionally, the court's review of a challenge to an administrative subpoena is not summary in nature.  Indeed, the Fourth Circuit observed that a person or entity "served with a subpoena duces tecum is entitled to the Fourth Amendment's protection against unreasonableness." *In re Subpoena Duces Tecum*, 228 F.3d at 347 (citing *Hale v. Henkel*, 201 U.S. 43, 76 (1906)).

---

[12] *See, e.g., Carpenter v. United States*, 585 U.S. 296, 314 (2018) ("The third-party doctrine partly stems from the notion that an individual has a reduced expectation of privacy in information knowingly shared with another.  But the fact of 'diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely.'") (quoting *Riley v. California*, 573 U.S. 373, 392 (2014)).

As for whether an administrative subpoena is reasonable under the Fourth Amendment, the Fourth Circuit observed that such an inquiry "'cannot be reduced to formula' because 'relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry.'" *Id.* (quoting *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946)). And particularly relevant here, the Fourth Circuit reinforced the Supreme Court's admonition that subpoenas must: (1) "not be excessive[ ] for the purposes of the relevant inquiry"; (2) "be authorized . . . for a purpose Congress can order"; (3) be "relevant to the inquiry"; and (4) not be used for "arbitrary fishing expeditions" or "out of malice or an intent to harass." *Id.* at 349 (quoting *Oklahoma Press*, 327 at 209; *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991)).

In quashing the Subpoena in the Patient Litigation, this Court relied on the four-element test articulated in *In re Subpoena Duces Tecum*,[13] finding that (1) the Subpoena lacked a proper investigative purpose and (2) movant patients' "interest in maintaining the privacy of their sensitive medical records outweighs any interest of the Government in calling for their production." Patient Op. at 15. Unlike the subpoena in *In re Subpoena Duces Tecum*—which concerned a single physician suspected of billing fraud based on specific, particularized evidence[14]—here, the Subpoena is distinguishable based on (1) its scope and breadth and (2) the Government's overall failure to submit an "articulated basis to suspect [CNH] of violations of the FDCA." *See* Patient Op. at 12; Patient Op. II at 22.

---

[13] For an administrative subpoena to be reasonable under the Fourth Amendment, the subpoena must be (1) authorized for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further its purpose; (3) sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome; and (4) not overly broad for the purposes of the inquiry as to be oppressive, a requirement that may support a motion to quash a subpoena only if the movant has first sought reasonable conditions from the government to ameliorate the subpoena's breadth. *In re Subpoena Duces Tecum*, 228 F.3d at 349.

[14] *In re Subpoena Duces Tecum*, 228 F.3d at 350.

## CONCLUSION

As the Subpoena does not meet statutory and constitutional requirements, the Subpoena should be limited to the extent it seeks personally identifying patient information, including but not limited to Request Nos. 11 to 13.

Dated: July 2, 2026

Respectfully submitted,

BARNES & THORNBURG LLP

*/s/ Steven Shipe*
Steven D. Shipe (Bar No. 1306190282)
John E. Kelly (admitted *pro hac vice*)
Jacquelyn Papish (admitted *pro hac vice*)
Victor Obasaju (admitted *pro hac vice*)
Barnes & Thornburg, LLP
555 12th Street, NW, Suite 1200
Washington, D.C. 20004
Steven.Shipe@btlaw.com
JKelly@btlaw.com
Jackie.Papish@btlaw.com
VObasaju@btlaw.com

Telephone: (202) 831-6731

*Counsel for Children's National Hospital*

15