**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN RE: CHILDREN'S NATIONAL SUBPOENA 25-1431-028** | **Civil No.: 8:26-cv-01825-JRR** |

# MEMORANDUM OPINION

Pending before the court is Movant Children's National Hospital's Motion to Limit Subpoena Duces Tecum at ECF Nos. 1 and 2 (the "Motion"). The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be granted.

## I. BACKGROUND

Children's National Hospital ("CNH") is an independent, non-profit institution that provides pediatric health services to children in Maryland, Virginia, and the District of Columbia. Among the many services and programs it provides across its 47 facilities in the region, for approximately 20 years, CNH has provided care to children and adolescents with gender dysphoria through its Gender Development Program (the "Program"). The type of care patients seek through the Program is commonly referred to as gender-affirming care, which is legal in every jurisdiction in which CNH operates. Through the Program, CNH provides a broad range of care and services to help patients and their families navigate the cognitive, social, and mental health aspects of gender and sexuality development. Until August 2025, the Program included prescription of gender-affirming medications among its services; CNH discontinued that aspect of the Program in response to Executive Branch government action targeting medical facilities providing gender-affirming care, as well as their minor patients who seek and receive it. (ECF No. 2-1 at p. 11; ECF

No. 2-2, Declaration of Dr. Nathan Kupperman, CNH Executive Vice President and Chief Academic Officer.)

On July 3, 2025, the United States Department of Justice (the "Department" or the "Government") issued an administrative subpoena to CNH pursuant to 18 U.S.C. § 3486. (ECF No. 2-3; the "Subpoena.") CNH instituted this action seeking a court order "limiting" the Subpoena to "exclude any and all Requests enumerated in the Subpoena . . . to the extent that such Requests . . . call for the production of the identities or health information of [CNH] patients or their families, including but not limited to Requests 11, 12, and 13"—which is to say CNH moves for limited quashal of the Subpoena. Requests 11 through 13 read as follows:

> Request 11: "Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy."
>
> Request 12: "For each such patient identified in Subpoena [Request 11], documents relating to the clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy."
>
> Request 13: "All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in [Request 11], including any disclosures about off-label use (*i.e.*, uses not approved by the United States Food and Drug Administration) and potential risks."

*Id*. at 9.[1] (Subpoena requests 11 through 13 are referred to herein as the "Subpoena Requests.")

As the parties acknowledge, this court has twice ruled that these administrative Subpoena Requests are unlawful. *See In Re 2025 Subpoena to Children's National Hospital*, Case No. 1:25-cv-3780-JRR, at ECF Nos. 23 and 24 issued January 21, 2026; and *In Re Administrative Subpoenas to Children's Hospitals*, Case No. 8:26-cv-1834-JRR, ECF Nos. 28 and 29 issued June 9, 2026.[2]

---

[1] Page references are to CM/ECF pagination.
[2] CNH is not a party to Case No. 1:25-cv-3780-JRR or Case No. 8:26-cv-1834-JRR. Both actions are presently

Specifically, the court ruled: (i) the Government failed to articulate a proper, legitimate investigatory purpose to subpoena these items from medical facilities that provide gender-affirming care to minor patients; (ii) the subpoenas in those cases (which contained the identical Subpoena Requests 11 through 13 at issue here) were not limited in scope to any identified purpose (legitimate or not) and were oppressive in breadth; (iii) adolescent patients' interest in maintaining the privacy of their sensitive medical records outweighs any interest of the Government in calling for their production particularly against the absence of a proper (no less compelling) governmental purpose underlying the subpoenas; and (iv) anonymizing records fails as a cure because anonymizing records does not address the underlying lack of legitimate subpoena purpose.

Nothing has changed. The Subpoena Requests have gained no legitimacy with time. The Government offers nothing new; indeed, to serve as its opposition here, the Government re-filed its brief in opposition to the movants' motion to quash in *In Re 2025 Subpoena to Children's National Hospital*, Case No. 1:25-cv-3780-JRR (ECF No. 14-1) with a new four-page summary of its position. (ECF No. 14.) Thus, the court need not restate its analysis on the legitimacy and legality of the Subpoena Requests, or the privacy and related constitutional interests of CNH's minor patients. Instead the court incorporates here its analysis at ECF No. 23 in Case No. 1:25-cv-3780-JRR, and ECF No. 28 at Sections I.A. – I.C, II, IV.C., and IV.D. in Case No. 8:26-cv-1834-JRR, *supra,* and attaches same as appendices hereto for convenience of the parties. Lest there be any doubt, the Subpoena Requests lack a proper, legitimate government purpose; the Government has failed to articulate any such purpose; the Subpoena Requests are overbroad and oppressive as compared to the Government's asserted purpose; responsive documents contain

pending appeal in the United States Circuit Court of Appeals for the Fourth Circuit; the appeal of Case No. 8:26-cv-1834-JRR is in abeyance pending the outcome in Case No. 1:25-cv-3780-JRR. (*See* order in Case No. 8:26-cv-1834-JRR at ECF No. 36.)

highly sensitive, personal information regarding vulnerable minors and their families and about which patients have an obvious and reasonable expectation of privacy; and CNH patients will undoubtedly be materially harmed should the court deny the requested relief.[3]

The court turns now to address the Government's arguments particular to CNH in the instant matter: 1) the Motion is untimely; and 2) because the Motion is untimely, the Government is shielded by sovereign immunity.

## II. ANALYSIS

### A. Timeliness: Return Date Under 18 U.S.C. § 3486

Pursuant to 18 U.C.S. § 3486(a)(5) on administrative subpoenas:

> At any time before the return date specified in the summons, the person or entity summoned may, in the United States district court for the district in which that person or entity does business or resides, petition for an order modifying or setting aside the summons . . . .

18 U.S.C. § 3486(a)(5). As set forth above, the Subpoena was issued on July 3, 2025. The return date specified in the Subpoena was August 7, 2025 (ECF No. 2-3 at p. 2); CNH filed its Motion on May 8, 2026. (ECF Nos. 1, 2). The Government therefore argues the Motion should be denied as untimely. (ECF No. 14 at pp. 2–3.) In response, CNH argues that good cause exists for the court to consider the Motion notwithstanding that it was filed after the return date. (ECF No. 15 at pp. 4–8.)

To begin, as explained in the court's above-mentioned opinions, 18 U.S.C. § 3486(a)(7) (on administrative subpoenas) incorporates the standards applicable to judicial subpoenas. It reads: "A summons issued under this section shall not require the production of anything that

[3] That harm is of course multi-faceted: psychological harm from exposure of highly sensitive and personal information; risk of social stigma and bullying (if not worse); damage to the medical provider/patient relationship in the form of care avoidance and discouragement of candid patient-doctor communication essential for effective and proper care; and harm to the healthcare institution generally by instilling fear in care providers. *See* ECF No. 2-2 at ¶¶ 14–20, Declaration of Dr. Nathan Kupperman, CNH Executive Vice President and Chief Academic Officer.

would be protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States." 18 U.S.C. § 3486(a)(7). Federal Rule of Civil Procedure 45 provides in relevant part:

> (d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.
>
> . . .
>
> (3) *Quashing or Modifying a Subpoena*
>
> (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

FED. R. CIV. P. 45(d)(3)(A)(i–iv). Further, Federal Rule of Civil Procedure 81 regarding "Applicability of the Rules in General" provides at subsection (a)(5): "These rules apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." FED. R. CIV. P. 81.

CNH urges that "courts in this Circuit permit objections to a subpoena after time specified by Rule 45(d)(2)(B) 'in unusual circumstances and for good cause.'" (ECF No. 15 at p. 5, first quoting *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349 (W.D. Va. 1999); then citing *Hall v. Baltimore Police Dep't*, No. CV 1:24-1137-RDB, 2025 WL 509130, at *15 n.5 (D. Md. Feb. 13, 2025); and then citing *Williams v. Big Picture Loans*, LLC, 303 F. Supp. 3d 434, 441

(E.D. Va. 2018).)

In *Motorsports Merchandise,* a subpoena recipient waited 105 days before objecting to a third-party subpoena duces tecum related to Sherman Act antitrust litigation over NASCAR souvenirs. 186 F.R.D. at 350. Interestingly, a motion to quash filed 36 days after the subpoena was received raised a challenge only as to service; issues of overbreadth and other production burdens were presented only in response to the plaintiff's motion to compel. *Id.* at 348. After concluding that the subpoena had been properly served, the court went on to address the substance of the subpoena, stopping first to consider whether the objections were timely. *Id.* at 349.

On the issue of timeliness of objections, the court explained that ordinarily a failure to raise a timely objection under Rule 45 operates as a waiver, but "[i]n unusual circumstances and for good cause, however, the failure to act timely will not bar consideration of objections." *Id.* Such unusual circumstances and good cause may be shown by a subpoena that is overbroad on its face, a subpoena that would impose significant expense on a nonparty acting in good faith, or contact between counsel for the subpoenaed party and the subpoenaing party prior to the challenge to the subpoena." *Id.* (first citing *Semtek Int'l, Inc. v. Merkuriy Ltd.,* Case No. 3607 DRH, 1996 WL 238538 at *2 (N.D.N.Y. May 1, 1996); then citing *Krewson v. City of Quincy,* 120 F.R.D. 6, 7 (D. Mass. 1988); and then citing *Celanese Corp. v. E.I. duPont de Nemours & Co.,* 58 F.R.D. 606, 609–610 (D. Del. 1973)).

The *Motorsports Merchandise* court found it especially "troubling" that the movant's counsel expressly assured the plaintiff's lawyer that it fully intended to comply with the subpoena and simply needed more time to review and assemble documents for production; later, however, objections were filed after the plaintiff finally moved to compel a response. *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. at 350. Importantly, the court also found the plaintiff

demonstrated "substantial need" for the requested documents because the subpoena recipient "is apparently one of only a few businesses still in operation which has sold [NASCAR] Winston Cup merchandise continuously since 1991." *Id.* Ultimately, the court provided partial relief to the subpoena recipient in terms of extended time to comply and compensation for associated costs.

In *Semtek International*, the court found the following amounted to good cause to consider an otherwise untimely objection: (i) overbreadth of the subpoena; (ii) the burden on a non-party recipient; and (iii) counsel for the recipient had been in communications with counsel for the party that issued the subpoena, including discussion about the "need for more time to amass and review the documents responsive to the subpoena and, later, a challenge to the legal basis for the documents sought." *Semtek Int'l*, 1996 WL 238538, at *2. Ultimately, the court concluded: "For these reasons a strict application of Rule 45[(d)](2)(B) appears unjustified . . . ." *Id. See also Williams v. Big Picture Loans, LLC,* 303 F. Supp. 3d 434, 441 (E.D. Va. 2018) (same; first citing *Bell Inc. v. GE Lighting, LLC*, No. 6:14-CV-00012, 2014 WL 1630754, at *9 (W.D. Va. Apr. 23, 2014), and then citing *In re Motorsports Merch. Antitrust Litig*., 186 F.R.D. at 349); *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136–37 (S.D. Ohio 1999) (same); *Huene v. United States Dep't of Treasury, I.R.S.*, No. 2:11-cv-2110 JAM AC PS, 2013 WL 417747, at *5 (E.D. Cal. Jan. 31, 2013) (same) (collecting cases).

Applying these factors to the instant Motion, first, as addressed above and in *In Re 2025 Subpoena to Children's National Hospital*, Case No. 1:25-cv-3780-JRR, and *In Re Administrative Subpoenas to Children's Hospitals*, Case No. 8:26-cv-1834-JRR, the Subpoena Requests are overbroad on their face, untethered to a legitimate governmental purpose, and appear intended to harass, oppress and intimidate patients seeking gender-affirming care and the medical providers who provide it. Second, here, CNH is the party to which the Subpoena was directed and, in this

way, a traditional Rule 45 analysis regarding avoiding undue burdens on a non-party is an ill-fit.

Third, it is abundantly clear to the court that CNH has conducted itself in good faith toward the Government and the court regarding response to and compliance with the subpoena from the start. There is no suggestion of "troubling" game-playing as in *Motorsports Merchandise*. *See* 186 F.R.D. at 350. To the contrary, prior to the August 7 return date, in the first communication with the Government regarding the Subpoena on July 25, 2025, counsel for CNH expressed CNH's intention to comply with the Subpoena subject to its firm stance regarding the protected personal health and related information of its patients. (ECF No. 2-4, letter of April 17, 2026, from CNH attorney John Kelly to AUSA Ross Goldstein detailing CNH conduct in response to the Subpoena, including restatement of grounds for objection to same.) Further, CNH made five rolling productions none of which contained the PHI on which it based its stated reservations—and each production was accompanied by an express reservation of rights including possible litigation. Rather than object to CNH's approach, the Government commended CNH for being "proactive" and expressed "appreciat[ion]" for the "work" CNH had done. *Id.*; (ECF No. 15 at pp. 7–8).

CNH decided to take protective measures by filing its Motion only after a conversation between counsel on March 30, 2026,[4] during which the Government pressed counsel for CNH about "the status of CNH's compliance with [the] Subpoena . . . including protected health information . . . of pediatric patients who received gender-affirming care services." (ECF No. 2-1

[4] For context, this conversation occurred just north of two months following this court's decision quashing the Subpoena Requests in *In Re 2025 Subpoena to Children's National Hospital*, Case No. 1:25-cv-3780-JRR. Thereafter, on June 18, 2026, in *In Re Administrative Subpoenas to Children's Hospitals*, Case No. 8:26-cv-1834-JRR, pursuant to court order at ECF No. 29 requiring the parties to advise the court regarding the need for prophylactic measures to protect any documents previously produced subject to the quashal, the Government advised the court: "[The Department also provides notice that it will not seek or require production of CNH patient medical records covered under Requests 11, 12, and 13, or any other Subpoena Request to the extent it includes CNH patient identities, or identification of parents or guardians of CNH patients as covered by the Court's order relating to the HIPAA subpoena at issue." (Case No. 8:26-cv-1834-JRR, ECF No. 31.) Yet, in this action, the Government continues to demand CNH produce patient records and other documents responsive to the Subpoena Requests.

at pp. 12–13; ECF No. 2-4 at p. 1; ECF No. 15 at p. 8.) The Government offers no contrary facts or argument. And while the Motion did not follow immediately (it was filed May 8, 2026), the court appreciates that litigation of this magnitude is not initiated lightly or easily; further, initiating a judicial action is quite a bit more involved than simply directing Rule 45 written objections under cover of letter to counsel. Finally, the Government was on actual notice of CNH's objections set forth in the Motion through telephone and other communications with counsel from day one. And, while the above-cited authorities do not identify prejudice as an independent or separate factor, it is plain that the Government having issued the Subpoena absent legitimate purpose suffers no prejudice by the court's consideration of the Motion filed after the return date; conversely, the scores of adolescent patients whose most closely guarded private information stands in the balance will confront certain trauma of the most vicious kind were the court to hold tight to form over function. The rules allow for some flexibility here, and the court finds good cause to extend it.

In sum, the court finds good cause to consider the Motion notwithstanding the subpoena return date of August 7, 2025.[5]

## III. CONCLUSION

For the reasons set forth above and in the attached appendices, the Motion is **GRANTED**. A separate order follows.

/S/

November 3, 2026

Julie R. Rubin
United States District Judge

[5] Having concluded that the Motion shall be considered for the reasons set forth above, the court does not reach the Government's argument that "[b]ecause Plaintiff's action is untimely, it is also barred by sovereign immunity." (ECF No. 14 at p. 3.)